# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| **WILLIAM PHILLIPS,** § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | Civil Action No. _____ | |
| § | | |
| **CHRISTOPHER A. MONROE,** § | | |
| **INDIVIDUALLY, GERALD R.** § | | |
| **SCHLOSSER III, INDIVIDUALLY,** § | **JURY TRIAL DEMANDED** | |
| **CHEROKEE COUNTY, AND JAMES** § | | |
| **CAMPBELL, AS CHEROKEE COUNTY** § | | |
| **SHERRIFF,** § | | |
| § | | |
| *Defendants.* § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, William Phillips, hereby files this complaint against Defendants, Christopher A. Monroe, individually, Gerald R. Schlosser III, individually, Cherokee County, and James Campbell, as Cherokee County Sheriff and in support thereof would respectfully show the Court as follows:

### I.    PARTIES

1.    Plaintiff, William Phillips, is an individual resident of the State of Texas.

2.    Upon information and belief, Christopher A. Monroe ("Monroe"), is an individual Texas resident who may be served at his ordinary place of business, 272 Underwood Street, Rusk, Texas 75785, or wherever he may be located. Monroe is sued in his individual capacity.

3.    Upon information and belief, Gerald R. Schlosser III ("Schlosser"), is an individual Texas resident who may be served at his ordinary place of business, 272 Underwood Street, Rusk, Texas 75785, or wherever he may be located. Schlosser is sued in his individual capacity.

1

4. Upon information and belief, Cherokee County is a political subdivision located in this judicial district. Cherokee County can be served by serving the county judge, Chris Davis, 135 S. Main, 3rd Floor, Rusk, Texas 75785. Tex. Civ. Prac. & Rem. Code § 17.024. On information and belief, Cherokee County funds and operates the Cherokee County Sherriff's Office ("CCSO") and is responsible for the creation, adoption, implementation, and/or enforcement of the policies, procedures, practices, and/or customs at issue in this suit.

5. Upon information and belief, James Campbell ("Campbell"), is the Sherriff of Cherokee County, and may be served at his ordinary place of business, 272 Underwood Street, Rusk, Texas 75785, or wherever he may be located. On information and belief, Campbell is the policy maker for Cherokee County responsible for the creation, adoption, implementation, and/or enforcement of the policies, practices, procedures, and/or customs at issue in this suit.

## II.  JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343, which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## III.  FACTUAL BACKGROUND

8. Plaintiff is a citizen of the United States. He is an individual resident of the State of Texas.

9.     Prior to September 12, 2016, Plaintiff stored personal property at 532 CR 1111, Rusk, Texas 75785.  Regina Phillips f/k/a Regina Hood, was listed as the legal owner of 532 CR 1111.  Plaintiff's brother, Joshua Phillips, was married to Regina Phillips on September 12, 2016.

10.    On September 12, 2016, at approximately 7:35 p.m., Plaintiff contacted Cherokee County Sheriff's Office ("CCSO") to determine how he should retrieve his personal property from 532 CR 1111.  Plaintiff told CCSO that Regina Phillips had instructed him not to go on the property.  Plaintiff wanted to know whether he could lawfully enter the property with his brother, who was married to Regina Phillips, so that he could retrieve his belongings.  CCSO responded with "you can go and you can do that."

11.    The next day, on September 13, 2016, Plaintiff traveled to 532 CR 1111 with his brother, Joshua Phillips, to retrieve their personal property from 532 CR 1111.  Plaintiff and his brother began to load their personal property on Plaintiff's trailer and in Plaintiff's truck.  Regina Phillips' father, Marshall Thompson, came over to the property at 532 CR 1111 while Plaintiff and his brother loaded Plaintiff's personal property.  Regina Phillips' father, Plaintiff, and Plaintiff's brother interacted in a civil nature without any confrontation.

12.    At approximately 8:28 p.m. on September 13, 2016, Regina Phillips called CCSO and reported a burglary in progress at 532 CR 1111.  Defendants, Christopher A. Monroe ("Monroe") and Gerald R. Schlosser III ("Schlosser"), responded that they would travel to 532 CR 1111 to investigate the report.

13.    Monroe was first licensed as a Texas Peace Officer on November 13, 2006.  Monroe received Peace Officer Field Training and Personnel Orientation from CCSO.  Schlosser was first licensed as a Texas Peace Officer on July 25, 2016, less than two months before the incident giving rise to this suit.  Schlosser's records indicate that he receive Personnel Orientation

from CCSO but does not indicate the number of hours of training he received from CCSO. Schlosser's records do not indicate that he received any other training from CCSO.

14. Monroe and Schlosser arrived at 532 CR 1111 in a Cherokee County vehicle (the Vehicle") traveling at a high rate of speed. The Vehicle did not have any flashing lights or sirens to identify it as a law enforcement vehicle. Instead, only the bright lights of the Vehicle were pointed at Plaintiff and Plaintiff's brother.

15. Monroe and Schlosser did not identify themselves as law enforcement officers upon exiting the Vehicle. Instead, Monroe yelled "Let me see some hands. Let's see some hands now! On the f***ing ground! On the ground mother****ers!" The image below is representative of what Plaintiff saw when Monroe and Schlosser approached (518_20160913_204800.mov, 1:52):



16. Monroe and Schlosser's weapons were drawn when they exited the Vehicle. Specifically, Monroe was pointing an assault rifle at Plaintiff and Plaintiff's brother. Schlosser was pointing a pistol at Plaintiff and Plaintiff's brother.

4

17. Plaintiff and his brother did not flee or resist. Plaintiff continued to load things onto the trailer and Plaintiff's brother even shrugged. Plaintiff and his brother complied by getting on the ground. Regina Phillips' father, Marshall Thompson, was told to lay on the ground as well. As Plaintiff and his brother got on the ground, Monroe and Schlosser charged towards them.

18. Schlosser turned on his body camera. Monroe did not turn on his body camera.

19. Plaintiff and his brother were handcuffed. Marshall Thompson was not handcuffed.

20. Plaintiff asked why he was being detained. He stated that he was not armed. He stated that he had a right to be on the property with his brother who was a property owner. Monroe responded that Plaintiff should shut his mouth. Plaintiff's brother explained that he was there to recover his property and that his wife owned the property. Plaintiff's brother also explained that Plaintiff had called CCSO the day before and Plaintiff was told he would be permitted on the property to get his things.

21. Monroe and Schlosser did nothing to investigate Plaintiff and his brother's claims that they were rightfully on the property.

22. After lying face down in the dirt for several minutes and being handcuffed, Plaintiff tried to sit up on the ground. Schlosser forced him back on his stomach, pushing Plaintiff's face back into the ground and tightening his handcuffs. Plaintiff's brother told Schlosser what he was doing was illegal. Plaintiff immediately began to experience pain because the handcuffs were too tight. Plaintiff told Schlosser the cuffs were "too tight." Plaintiff began to get agitated and screamed out in pain, complaining about the handcuffs. He complained repeatedly that the handcuffs were too tight and were cutting off circulation in his hands.

23. Plaintiff told Schlosser he could not feel his hands. In agony, Plaintiff cried out "I'm asking you to loosen the cuffs a little bit."

24.     Monroe came over to Plaintiff in response to his complaints about his handcuffs. Quoting Sgt. Hartman in the movie Full Metal Jacket, Monroe asked Plaintiff "what's your major malfunction?"  When Plaintiff complained about his handcuffs being too tight, Monroe told Plaintiff to "quit acting like a b****." Monroe picked Plaintiff up from the ground and pushed him over to the Vehicle. Plaintiff cried out that he had not done anything wrong. Monroe asked Plaintiff, "is this your f***ing house?" Plaintiff responded that it was his brother's house and he was invited there. Plaintiff explained that he had been invited to the house by his brother who was married to the property owner. Monroe then slammed Plaintiff into the Vehicle. A loud thud can be heard in the dash cam video of the Vehicle. Plaintiff cried out in pain.

25.     Plaintiff continued to complain that his hand cuffs were cutting off his circulation. Monroe responded with "get in the f***ing car." When Plaintiff continued to complain about the handcuffs hurting his hand Monroe responded with "quit being a b****."

26.     Plaintiff indicated that he could not get all the way in the car because his handcuffs were too tight.  Monroe still did not check Plaintiff's handcuffs.  Instead, Monroe slammed Plaintiff's knee between the barricade in the back of the Vehicle and door of the Vehicle.  After Plaintiff cried out in pain, Monroe slammed Plaintiff's knee in the Vehicle a second time. Plaintiff's screams are recorded on the dash cam video of Vehicle explaining that his knee had just been slammed in the door of the Vehicle. Plaintiff asked why Monroe slammed his knee in the door. Monroe initially responded "because you . . ." paused, and then responded with "what's f***ing wrong with you?"

27.     Then, Monroe jerked Plaintiff out of the Vehicle and slammed Plaintiff's head into the roll cage on the inside of the Vehicle. Plaintiff cried out again in pain. At this time, blood was running down Plaintiff's face.  Monroe put Plaintiff on the ground rolling him over his handcuffs causing more pain.

6

28. For the first time, Monroe turned on his body camera. His attitude and demeanor are remarkably different from that point on.

29. While on the ground, Plaintiff explained, again, that he was there with his brother who was married to the property owner. Monroe responded that "it was the wrong thing to do tonight. . . ."

30. When Monroe put Plaintiff back in the Vehicle, Monroe told Plaintiff that he was under detention before but "now [he was] under arrest." Monroe then closed the door of the Vehicle and left. Monroe did not read Plaintiff his Miranda rights. Monroe never identified why Plaintiff was being arrested.

31. After Plaintiff got in the Vehicle for a second time, Monroe called into dispatch and asked what happened to the complainant. Monroe said, "I'm about to call bulls*** on this call if I don't hear something from the complainant." Monroe did not release Plaintiff or his brother from arrest or detention.

32. While Monroe was assaulting Plaintiff, nearly ten minutes after Monroe and Schlosser arrived, Plaintiff's brother asked Schlosser why no one checked his license to prove that he lived there. Schlosser responded with "we're getting it sorted out," but did not check Plaintiff's brother's driver's license. Plaintiff's brother told Schlosser what he and Monroe were doing to him and Plaintiff was illegal and that they were going to get sued.

33. About fifteen minutes after he and Monroe first arrived, Schlosser stood up Plaintiff's brother and searched him for weapons. Schlosser found no weapons.

34. About twenty minutes after he and Monroe first arrived, Schlosser removed the handcuffs from Plaintiff's brother.

35. Ultimately, Monroe released Plaintiff from the Vehicle and released him from handcuffs. Monroe apologized to Plaintiff for his actions. He claimed that he and Schlosser were

7

just following Cherokee County "protocol." Monroe also explained that he did not know if Plaintiff was just some dirt bag.

36. Plaintiff asked for Monroe and Schlosser's name and badge numbers.

37. After Plaintiff was released, Monroe made a call on his cell phone. On information and belief, that call was to his supervisor. Monroe stated on the call that he was "probably going to get a complaint tomorrow." On the call, Monroe claimed all he did was "drag [Plaintiff] into the car." Monroe also stated that he thought Plaintiff was going to sue him.

38. At approximately, 9:34 p.m. on September 13, 2016, Plaintiff called to report Monroe's excessive use of force, specifically identifying slamming his knee in the door of a car and hitting his head on the Vehicle. On information and belief, no investigation was conducted and Monroe received no discipline for his actions.

## IV.    EXCESSIVE USE OF FORCE
*(against Monroe and Schlosser in their individual capacity)*

39. Plaintiff incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

40. Plaintiff was seized by Monroe and Schlosser on September 13, 2016.

41. Monroe and Schlosser were state officials who were acting in their personal capacity on September 13, 2016, and acted under color of law.

42. At the time of Monroe and Schlosser's use of force Plaintiff was not involved in any crime. Plaintiff specifically obtained instructions from CCSO and was complying with those instructions. He was lawfully on the property by invitation, and was lawfully retrieving his own personal property.

43. Monroe and Schlosser did nothing to investigate the alleged burglary after detaining Plaintiff and Plaintiff's brother. Likewise, Monroe and Schlosser did nothing to investigate

Plaintiff and Plaintiff's brother's claims that they had done nothing wrong and were lawfully on the property. Instead, nearly ten minutes after arriving, without any evidence to confirm a complain Monroe characterized as "bulls***," Monroe began to use excessive, unreasonable, and unnecessary force on Plaintiff.

44. At that time, Plaintiff was not physically resisting and posed no immediate threat to either of them. Plaintiff never attempted to flee nor indicated that he was going to flee. Instead, Plaintiff affirmatively stated that he was not going to flee or cause any harm to Monroe or Schlosser. Plaintiff stated that he was not armed. Plaintiff was not armed. He was restrained in handcuffs during all of Monroe and Schlosser's assaults. Plaintiff did not indicate that he was dangerous or a threat to Monroe or Schlosser.

45. Monroe and Schlosser used clearly unreasonable, unnecessary, and excessive force against Plaintiff. For example, when Plaintiff was already on the ground and handcuffed, Schlosser over-tightened Plaintiff's handcuffs. Further, after Plaintiff was retrained in handcuffs, Monroe "dragged" Plaintiff to the Vehicle. Then, Monroe slammed Plaintiff into the Vehicle while Plaintiff was restrained. Monroe also slammed Plaintiff's knee into the Vehicle twice by closing it in the door of the Vehicle while Plaintiff was restrained and seated in the Vehicle. Then, Monroe hit Plaintiff's head on the roll cage of the Vehicle by pulling him out of the Vehicle.

46. No reasonably prudent officer under similar circumstances could believe Monroe or Schlosser's conduct was justified. Clearly established law prohibits officers from using force on a restrained individual who is not resisting and not attempting to flee. *See, e.g., Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding that officer should have known that he could not slam plaintiff's face into a vehicle while she was restrained and subdued); *Curran v. Aleshire*, 67 F. Supp. 3d 741, 753 (E.D. La. Dec. 15, 2014) (defendant should have known "that when no one is resisting arrest, attempting to escape, or otherwise posing a threat at the time of the alleged use of

force, 'slamming' one into walls and thereby causing injuries constitutes an excessive use of force").

47. Monroe and Schlosser violated Plaintiff's rights under the Fourth Amendment and Fourteenth Amendment of the United States Constitution. Monroe and Schlosser are liable to Plaintiff under 42 U.S.C. § 1983 for Plaintiff's damages.

48. Plaintiff suffered injuries as a result of Monroe and Schlosser's excessive use of force. Plaintiff's requests for relief are set forth below and incorporated herein by reference.

## V. BYSTANDER LIABILITY
*(against Schlosser in his individual capacity)*

49. Plaintiff incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

50. Schlosser was a state official who was acting in his personal capacity on September 13, 2016, and acted under color of law.

51. Schlosser was aware that Monroe was committing constitutional violations by using excessive force against Plaintiff. Schlosser could heard Plaintiff screaming loudly. Schlosser would have been able to see Monroe's assaults on Plaintiff from where he was standing.

52. Schlosser had time to intervene and prevent Monroe's continued violation of Plaintiff's constitutional rights by stopping Monroe from continuing to use excessive force against Plaintiff. Plaintiff's screams of pain lasted over a minute. Schlosser was approximately 20 feet from Plaintiff and Monroe while Monroe was assaulting Plaintiff. Yet, Schlosser did nothing to intervene or even check to see if Plaintiff was being harmed, despite loud screaming from Plaintiff.

53. Schlosser chose not to act, and instead, chose to allow Monroe to violate Plaintiff's constitutional rights by using excessive force against Plaintiff.

54. Schlosser is responsible for Monroe's excessive use of force as a bystander.

55. Plaintiff suffered injuries as a result of Schlosser's failure to act and Monroe's use of excessive force. Plaintiff's requests for relief are set forth below and incorporated herein by reference.

## VI.   FALSE ARREST
*(against Monroe in his individual capacity)*

56. Plaintiff incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

57. Monroe was a state official who was acting in his personal capacity on September 13, 2016, and acted under color of law.

58. Monroe falsely arrested Plaintiff. Monroe closed Plaintiff in the back of the Vehicle. Monroe told Plaintiff that he was under arrest. Monroe did not read Plaintiff his rights. Monroe did not identify why Plaintiff was being placed under arrest.

59. Monroe had no probable cause to arrest Plaintiff. Monroe himself did not believe the complaint information regarding an alleged burglary, which he was provided at the time of arrest. Monroe himself described the complaint regarding burglary as "bulls***." There was no other evidence that Plaintiff had committed any crime. No reasonable person would conclude that Plaintiff had committed or was committing an offense at the time Monroe arrested Plaintiff.

60. Monroe's false arrest violated Plaintiff's rights under the Fourth Amendment and the Fourteenth Amendment of the United States Constitution.

61. Plaintiff sustained injuries as a result of Monroe's false arrest. Plaintiff's requests for relief are set forth below and incorporated herein by reference.

## VII.     FOURTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
*(against Cherokee County and Campbell)*

62.  Plaintiff incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

63.  A Cherokee County policy, practice, procedure, and/or custom existed, including, but not limited to, policies, practices, procedures and/or customs regarding responding to burglaries in progress, communications with dispatch regarding complaints, verification of information from suspects and complainants, arrests, and/or uses of force.  One or more of those policies, practices, and/or customs were the moving force behind, and directly linked to, the violation of Plaintiff's rights and Plaintiff's injuries.

64.  Cherokee County policy makers, including at least, Campbell, in his official capacity, promulgated, adopted or enforced these policies, practices, procedures, and/or customs; or actually or constructively knew the policies, practices, procedures and/or customs existed.  On information and belief, Campbell and/or Cherokee County has authority to set policies of Cherokee County, including but not limited to, responses to burglary in progress, use of weapons during detention, use of force, investigation into complaints, and/or training regarding use of force.  Campbell and/or Cherokee County had a duty, but failed to properly implement and/or enforce these or other policies, practices, procedures, and/or customs.

65.  Monroe expressly stated that his actions were taken against Plaintiff because of, or consistent with, a Cherokee County policy or protocol.

66.  On information and belief, Cherokee County and/or Campbell has adopted a custom or practice which is so common and well-settled as to constitute a custom or practice that fairly represents county policy having the force of law.  On information and belief, Cherokee County and/or Campbell has a pattern of abuses that has occurred for so long or so frequently that

the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is expected and an accepted practice. A violation of federal rights, like Plaintiff's, was highly predictable or plainly obvious.

67. Cherokee County and/or Campbell permitted the conduct and violations to continue occurring. Therefore, Cherokee County and/or Campbell have exhibited deliberate indifference to the right of Plaintiff under the Fourth Amendment and Fourteenth Amendment of the United States Constitution. The known and obvious consequence of these policies, practices, procedures, and/or customs is to place its officers, like Monroe and Schlosser, in recurring situations in which those officers violate the constitutional rights of citizens of the United States of America and the State of Texas. Those policies, practices, procedures, and/or customs directly and predictably resulted in the violation of Plaintiff's constitutional rights and injuries.

68. On information and belief, Cherokee County and/or Campbell failed to properly train its officers including Monroe and Schlosser. For example, and on information and belief, Monroe and Schlosser did not receive proper training about use of force, including the type of force used against Plaintiff. Monroe's training records show no training from Cherokee County on excessive use of force. Schlosser's training records show no training on excessive force, from Cherokee County, or otherwise. Campbell and/or Cherokee County's failure to train Monroe and Schlosser directly and predictably resulted in the violation of Plaintiff's constitutional rights and injuries.

69. Cherokee County and/or Campbell are liable to Plaintiff under 42 U.S.C. § 1983.

70. Plaintiff sustained injuries as a direct and predictable result of Cherokee County and/or Campbell's policies, practices, procedures and/or customs. Plaintiff's requests for relief are set forth below and incorporated herein by reference.

## VIII.     DECLARATORY JUDGMENT
*(28 U.S.C. § 2201, et seq.)*

71. Plaintiff incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

72. Plaintiff seeks a declaration from this Court that Defendants' wrongful conduct as described herein has violated, and is in violation of the Fourth and Fourteenth Amendments of the United States Constitution and the law of the State of Texas.

73. Plaintiff's request for relief is set forth below.

## IX.     CONDITIONS PRECEDENT

74. Plaintiff has satisfied all conditions precedent prior to filing suit.

## X.     DAMAGES

75. Plaintiff incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

76. Plaintiff suffered physical pain and suffering for bodily injuries, lost wages, emotional pain, inconvenience, mental anguish, and loss of enjoyment of life, in the past and future for each category of damages, as a result of Defendants' wrongful conduct as described herein.

77. Additionally, and in the alternative, Monroe and Schlosser acted with malice or reckless indifference to Plaintiff's rights, by engaging in willful, malicious, intentional, and/or oppressive conduct and acted with willful and conscious disregard, or alternatively reckless disregard or indifference of the rights, welfare, and safety of Plaintiff, therefore justifying the award of punitive or exemplary damages in an amount to be determined by the jury at trial.

78. Plaintiff is entitled to attorney's fees and costs associated with this matter, including but not limited to expert fees and costs. 42 U.S.C. § 1988.

## XI.     JOINT AND SEVERAL LIABILITY

79.     Plaintiff incorporates by reference all of the allegations set forth in the foregoing paragraphs of his complaint as if set forth in full herein.

80.     Defendants are jointly and severally liable for Plaintiff's injuries and damages.

## XII.     JURY DEMAND

81.     Plaintiff hereby demands a jury trial on all issues so triable.

## XIII.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment in his favor against Defendants and for the following relief:

a.  That the action, policies, practices, procedures and/or customs of Defendants complained of herein be determined, adjudged, decreed, and declared to be in violation of the rights of Plaintiff under the Fourth Amendment and Fourteenth Amendment of the United States Constitution and the laws of the State of Texas;

b.  That judgment be entered in favor of Plaintiff against Defendants;

c.  That Plaintiff be awarded all of his damages, including but not limited to, pain and suffering, lost wages, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and/or all other past and future pecuniary loses;

d.  That Plaintiff be awarded all pre-judgment and post-judgment interest as permitted by law;

e.  That Plaintiff be awarded attorney's fees, including expert expenses, and costs associated with this matter;

f.  That injunctive relief be granted requiring Campbell and/or Cherokee County to correct the policies, practices, procedures, and/or customs which caused Plaintiff's injuries, requiring Campbell and/or Cherokee County to train officers on the subject of use of force, requiring investigations into complaints against CCSO officers concerning excessive use of force, and requiring discipline for Monroe and Schlosser's violation of Plaintiff's constitutional rights; and

g.  That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have remedied the practices complained of and is determined to be in full compliance with the law of the United States and the State of Texas.

Plaintiff further demands such other and further legal and equitable relief provided by law.

Respectfully submitted,

/s/ Eric M. Albritton

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
Shawn A. Latchford
Texas State Bar No. 24066603
sal@emafirm.com
**ALBRITTON LAW FIRM**
111 West Tyler Street
Longview, Texas 75601
Telephone:  (903) 757-8449
Facsimile:  (903) 758-7397

680 North Carroll Avenue, Suite 110
Southlake, Texas 76092
Telephone: (817) 251-0610

Mailing Address:
P.O. Box 2649
Longview, Texas 75606

*Counsel for Plaintiff*
*William Phillips*